162251 and number 162261 Anthony E. Sanapi v. RI Board of Bar Examiners Good morning, your honors. May I reserve three minutes? You may. That will be deducted from your initial time. Michael Field on behalf of the defendants. Your honors, to resolve the state's appeal in this case, all this court need do is look to its prior precedent. The district court determined that Mr. Sanapi was a prevailing plaintiff because the district court said it awarded a T.R.R. in his favor. And on appeal, Mr. Sanapi says that he is a prevailing plaintiff because the district court issued a T.R.R.O. and it changed the legal relationship between the parties. But not since this court in 2002 in Reyes v. Toledo de Villa has that been the law of the circuit. This court noted in that case that one does not qualify as a prevailing plaintiff simply by obtaining a change in the status quo. Rather, a plaintiff prevails when actual relief on the merits of his claim materially alters the legal relationship between the parties. And in Reyes, even though about a month had elapsed between the time the complaint was filed and the injunctive relief that was granted, this court still noted that in that case, in Reyes, the case never progressed to the merits of the appellant's ADA claim, even in a prefatory way. That timeline is in sharp contrast to the timeline in this case. In this case, the lawsuit is filed on Friday in the afternoon, and the T.R.R.O. is filed on that Friday. The T.R.R.O. is heard on the following Monday, about 48 hours or 72 hours later, and the T.R.R.O. is issued that afternoon. It becomes irrevocably executed, as this court noted when the state attempted to appeal earlier, the following day. So that timeline of about 72 hours, 48 hours of which were weekend hours, but that 72-hour time frame is in sharp contrast to what Reyes has already said the law of this circuit is. I'm going to jump in on you. I'm surprised you're starting off with the prevailing party thing when you've got a layup on the Rooker-Feldman argument. Isn't this – I mean, your opponent does not even cite federation. It saturates your two briefs. And I'm having a hard time seeing why this is not – nothing but net, as we say in basketball. This ball flops right in the middle of the Rooker-Feldman document. It never – can you tell me what your position is on that? Sure. My position is – and I've vacillated back and forth between which argument to lead on, to lead with, and my argument with that is that Uncursed was too very good at building arguments for this court. I agree with you, Your Honor. This is Rooker-Feldman. They never address federation. This is Rooker-Feldman for a number of reasons. I mean, you've got the Supreme Court order, the Rhode Island Supreme Court order that issues on Friday that denies the exact relief that the district court grants on the following Monday, 72 hours later. Mr. Snappy appealed to the – or petitioned to the Rhode Island Supreme Court for, among other accommodations, a 25 percent additional time. The Rhode Island Supreme Court denied that order. Matter of fact, he goes into the Rhode Island Supreme Court with – it represents three times in his petitions, his main petition, his reply petition, and then the conference with the Chief Justice of the Rhode Island Supreme Court. Mr. Snappy says, if you don't grant my accommodation, if you don't grant me my 25 percent, I'm going to appeal to the district court. Counsel, there was a – I believe it was set forth in Apatey's brief. There's an attempt to characterize that decision of the Rhode Island Supreme Court as one that is not on the merits. It never addresses the federal issues that were raised. Instead, it was a kind of – it was driven by logistics, the inability in the available time frame to get all the members of the court together. And so as a logistical decision, it's not remotely a decision on the merits of the federal claims. Is there anything, to your knowledge, in the record that supports that characterization? I've got two comments. Number one, I think that the merit distinctions are relevant. What this court has said is, in federacion, is that it's when the state proceedings have ended. And there are numerous cases where state proceedings end with a denial of a petition for certiorari, and that invokes the United States Supreme Court's jurisdiction. But to answer Your Honor's question, that conclusion is based entirely on the in-chambers conference, unrecorded. I noted in my brief that, with all due respect to the Chief Justice, it's hearsay. And it's the equivalent of, after today's argument, going back and saying, well, the court asked these questions, and then having the court issue an open order to the contrary. Appellate courts speak through their orders. And the court's order is plain on its face. It also provides substantive relief in the sense that it ordered your client to provide the report, the medical report, that it had relied on in determining that he did not qualify. It did reach the merits. It denied the petition. It didn't say we weren't going to review it. It denied the emergency relief that was sought. And as Your Honor just noted, it granted the IME report. The other point, too, and I think it was in the Felden case, but I think the Felden case is referring to In re Summers, that when a situation such as this, when a bar examiner committee report goes to the state Supreme Court, and in Summers it was the Illinois Supreme Court, when they take cognizance of that petition and deny that, there's language in Summers that says that's a determination on the merits. Now, going back to my point to Judge Lopez, I'm not sure that that's relevant at all for Worker-Felden purposes because the proceedings have ended. But whether you want to make it a merit-based or a termination-based determination, either way resolves in the state's favor. The other point, going back to Worker-Felden, so you've got the order, you've got the prior papers that were submitted saying that if my relief is not granted, I'm going to go to federal court and appeal, which from a federalism point of view is, with all due respect, among the most egregious things I've ever seen. You're not supposed to wag your finger at the state court judge and tell him if you don't get what you want here, you're going to go to federal court. At the Chief Justice, nonetheless. I mean, it's just, and I mean this in a respectful manner, but from a federalism point of view, it's just offensive. Having said that, the federalism issues continue because even after the district court issues the TRO and then Mr. Snappy applies for attorney's fees, he applied for attorney's fees based on time that he had spent petitioning the Rhode Island Supreme Court through the emergency petition. The state objected, and Mr. Snappy's response was, well, part of petitioning the Rhode Island Supreme Court, that process was necessary and was integral to the federal district court process because I had to exhaust my state remedies. Then the district court, in the attorney fee decision, actually notes that he's awarding fees for the time spent petitioning the Rhode Island Supreme Court because the time petitioning the Rhode Island Supreme Court was necessary to exhaust the state remedies. I mean, the district court judge literally walked right through the Rooker-Feldman doors and then shut the doors right behind him and locked them as soon as he said that fees were appropriate because the plaintiff had exhausted his state remedies, right in line with federal C.O. and the termination of state proceedings. That was, I think the end of it was before that point, but that certainly shut the door on it. The other point on the Rooker-Feldman doctrine, and now Judge Ponsner, maybe I should have led with this point, this court's noted in Puerto Rico Party that where the core issues between the state Supreme Court and the federal district court are the same core issues, that that's seeking review of the state court order. The core issues weren't the same here. The relief sought was precisely the same relief. He was denied the 25% accommodation by the Chief Justice in the Rhode Island Supreme Court and then got the same relief the next day. As a matter of fact, when they convened the TRO hearing from the district court, there's this colloquy about trying to get the court's attention, and the district court judge chimes in, you've got the district court's attention, I've been reading this material all weekend, again on that short time frame. And Mr. Snappy pipes up or responds that not the district court, we're trying to get the Rhode Island Supreme Court's attention. Again, from a federalism point of view, this just set the stage for the opportunity that we never got to, and I don't know what the answer would have been, but had Mr. Snappy passed the July bar exam, it certainly presented the question to the Rhode Island Supreme Court which order are we going to follow? Are we going to follow the district court's order that granted him this accommodation, or are we going to follow our own order? If we agree with you that Rooker-Feldman failed to this case, do we have to address the Eleventh Amendment immunity issues and the prevailing party issues, or is that just the end of it? That's the end of it. Excuse me, let me set that microphone for Judge Lynch. That's the end of it. I mean, if the district court does not have jurisdiction, and that's clearly what Rooker-Feldman is, it's a jurisdictional issue, then everything from that point on fails. And that's been our argument literally since the papers were being submitted over the weekend in July 2015, that Rooker-Feldman applies, that the court never had jurisdiction, and to kind of segue back to the prevailing party issue, the district court just never paid any attention to that whatsoever. To what, to the Rooker-Feldman argument? To the Rooker-Feldman argument. Just never even acknowledged it, never said, well, I think it could apply, or tried to distinguish it, just completely ignored it, 100% ignored it. It also reminds me of what the United States Supreme Court has said in Saul v. Weiner. In segueing back to the prevailing party argument, I already analogized this 72-hour time frame to Race v. Toledo-De Villa, where it was about a month in time frame. The United States Supreme Court has noted in Saul that all preliminary injunctions and TROs, in that case it was a preliminary injunction, are not created equal. Some are more hasty than others, and the time frame in Saul was the exact time frame in this case. The order, the lawsuit was filed one day, the hearing was held the next day, and the TRO was issued that day, and the event was the following day. And in that case in Saul, the United States Supreme Court denied attorneys' fees and noted that the preliminary injunction was necessarily hasty and abbreviated. I cited in my brief the United States Supreme Court case involving the University of Texas, where the courts noted that when a preliminary injunction is granted, parties will generally have had the benefit neither of a full opportunity to present their cases nor a final judicial decision based on the actual merits of the controversy. And the fact that the district court in this case never even looked at Walker-Feldman just demonstrates how necessarily hasty and abbreviated that proceeding was. It never should have led to attorneys' fees, and it was effectively reversed or undermined with the Eleventh Amendment argument later on. Judge Lynch, do you have any questions for counsel? No, thank you. Thank you, Your Honors. Thank you, Counsel. Thank you, Your Honors. May it please the Court. I think probably you should begin with Rooker-Feldman, Counsel. And I would add that I believe the reason that my brother didn't lead with Rooker-Feldman is because he knows it doesn't apply in this case. It doesn't apply in this case for numerous reasons, but the biggest reason turns on this. There's only two ways to get to the Rhode Island Supreme Court. Anybody who does appellate work in Rhode Island knows this. An appeal of right under Rule 3 or an extraordinary writ under Rule 13. Those are the only two ways to get there. Isn't that precisely what Judge Lipp has addressed in the Federazione case? Appealability to the Supreme Court does not eliminate Rooker-Feldman protection. I think the decision says it explicitly. Those are the two ways to get there. Non-discretionary extraordinary writ or an appeal of right. This was the only way to get to the Supreme Court in this case was by an extraordinary writ. And that was essentially what that emergency petition was. I'm going to repeat myself. Even if you're right and there was no access to the Supreme Court to obtain review of what the Rhode Island Supreme Court did, doesn't Federazione say that that is not an argument that overwhelms Rooker-Feldman? Your Honor, I'm not sure how Federazione applies in this context. And if I may just reference Rule 13e, which I believe governs and why I didn't address that case. Rule 13 says, and before I say this, I just want to say that the rule of law binds us all. It binds the board, this court, it binds the plaintiff. I write Rule 13e, but I'll be darned if my client doesn't get the benefit of it. It reads as follows. A denial of a petition without warrant is not an adjudication of the merits and has no precedential effect. And such action is to be taken as being without prejudice to a further application to this court or any court for a relief sought. That's it. There's no Rooker-Feldman. This court wants to ignore Rule 13e and say, that's okay, it's final judgment on the merits. Notwithstanding, the Rhode Island Supreme Court's own order, that's up to this court. Didn't Federacion say that the fact that something is not a final judgment on the merits does not undermine Rooker-Feldman? Isn't that exactly what Federacion? Federacion was an interlocutory ruling which addressed the same issue that an individual tried to get review of in the federal court. And the basic litmus for application of Rooker-Feldman is, is the state court case over? It doesn't matter whether it has precedential value. It doesn't matter whether it's appealable to the Supreme Court. What matters is, is the state court proceeding over before the person goes into federal court, which is exactly what happened here. So the ruling you just cited, read in the light of Federacion, I don't see how it has the sort of fatal impact on application of Rooker-Feldman that you suggest. Your Honor, I respectfully disagree. I think we're entitled to Rule 13e protection. But I'm going to go further on this. Because you asked, what evidence was it in the record that Chief Justice Sattel couldn't decide this case and couldn't convene the full court prior to the exam? It's Paragraph 47 of the verified complaint. That's undisputed. Our motion is misstanded. That is the undisputed evidence before this court. I say a lot of things. I'm saying a lot of things right now. I've said a lot of things all morning. But that's not what my decision is. But my decision is what I write down. Judges say a lot of things. We don't have the record. We have your, I'm sure, sincere. I'm not suggesting that you're misleading us. But we have your perspective on what was said, about which we have no record. We don't have the context. We don't have any suggestion of ambiguity. But even accepting that he said that, so what? I say many things when I'm hearing argument. My decision is the decision that I put in writing. And it was a decision on the merits, wasn't it? It was not a decision on the merits. As a matter of fact, I don't even know what that order meant. And by way of example, I'm going to use the exhibit that was provided by the board. It provided, in order of the Supreme Court, denying search, that page at 36 in their reply brief addendum. And if you look at that, it talks about, well, Justice Fularity, I think, dissented. And Redistort is denied. Okay. Rule 13E says that goes on. You say it doesn't matter, but that's fine. When I say it goes on, they could seek further relief. The order in this case says the duty judge directs thus and such. It doesn't say, it's not an order of the court. It's an order of the duty judge. And it doesn't really even say what's happening with this petition. I mean, the relief is denied. Is the whole petition denied? Is it still going forward? What's going on? If I deny Redistort, it's over. I agree, okay? But when I say, well, I deny this relief, the emergency relief, but I gave you this, okay, now what? What about other things that were argued about before you? What about that? Did you get your IME? We didn't get it until after the T.R.O. hearing. Okay. Did you get it as a result of the judge's order? I suppose. So his order was effective in getting you your IME, but it was not effective in denying your other request for relief. That's correct. Which, again, leads me to believe there's something else going on here. And, again, releasing, you know, I think he felt releasing these records was different than, you know, providing the affirmative relief that was requested, which I believe he thought he couldn't really decide it because he needed the full court. This is a significant issue regarding ADA and the protections of the ADA and due process, and not something he felt that he could determine. And I think that's how he attended to it. Counsel, can you explain to me, because this is an argument that apparently the district court endorsed, that somehow you were going through some necessary administrative exhaustion procedure as a prelude to getting into federal court. Is that how you characterized what was taking place when you went to the Board of Bar Examiners about getting relief there? You then went to the Supreme Court. If that was your characterization, what do you mean by that? I thought we had to try to exhaust the administrative procedural remedies that might be available to us before we sought anything in federal court. And that's what we did. We tried to exhaust this process, and we got the judge who said, I can't make a decision, and this is what I'm going to do. The judge did not say, I can't make a decision. You keep raising that characterization. There's nothing in the record where the judge says, I can't make that decision. Paragraph 47 of the certified complaint. I mean, if the matter goes forward, we can take his deposition. I don't care. I'm just telling you what happened. Let me say something else, and this kind of troubles me a little bit. Because the Rhode Island Supreme Court says, and it says right here, without prejudice to a further application to this court or any court for further relief, why can't we go to federal court and get further relief? The Rhode Island Supreme Court said we could. I don't understand that. I don't understand federation preventing this relief when the Rhode Island Supreme Court itself authorized us to go to federal court and get relief. I don't understand it. My brother knows that. That's why he didn't leave with Rooker-Felman. And I'm not going to say anything else on it, because I think it says what it says. If this court doesn't want us to go with it, that's your right. In any event, on to prevailing party. Prevailing party status, in my view, is equally clear-cut. And I do really think Rooker-Felman is clear-cut if this court gives effect to this rule as it must do, as the Rhode Island Supreme Court wants it to do. In any event. So what you're saying is that rule says that the Rhode Island Supreme Court, that rule says that any time you're unhappy with this particular ruling, feel free to go to federal court and get it reversed. That's what it says. If a writ of cert is denied, okay, it's without prejudice to further the application of this court or any court for relief sought. This court cannot invoke Rooker-Felman without ignoring that provision. The Rhode Island Supreme Court said so. They said, go for it. Justice Helms said, go for it, basically when he said, I couldn't make the decision. And I have tremendous respect for him, and I understand, you know, what happened and what his concerns were. Prevailing party status, it's very simple in my opinion. You have to show two things. You have to show material change, judicial imprimatur. No question it was a material change. He got the entire relief he wanted. He got to take the exam. That's the crux of the entire complaint, notwithstanding the basis for that. The second thing is, is there a decision that is a judicial decision? Yes. And was this decision sufficiently on merits? Now, the case law, Judge McConnell made it very clear, both I think in his order and also in his memorandum order on attorney's fees. He made it very clear, look, this was a decision that I'm visiting the merits because I found a substantial likelihood of success on the merits of the violation of the ADA claim. By the way, he could have found substantial likelihood of success on a due process claim. Why? Because when you give a conclusionary denial and then tell somebody, I can't tell you the reason for it, you've got to petition the Supreme Court to get that answer. That is a black-letter violation, a minimum due process that anyone knows who went to law school. In any event, he decided it on the ADA basis. He decided it on the merits. Because he did so, as this court has noted, I think, in the main schoolhouse number 35, as the Supreme Court has said in the sole case, interlocutory orders, preliminary and injunctively, can be the basis for a prevailing party status. And this case has all the elements. It was a decision on the merits to the extent it was on the issue of likelihood of success on the merits. And it granted up all relief sought. And the other case is the race case. That case, the judge said, well, I didn't really find a substantial likelihood of success on the merits. I just did that to preserve the status quo. I didn't really decide that on likelihood of success. That's why that case was reversed. You've got the opposite here. Judge McConnell is telling you, no, I did it on the merits. These are veto merits. Race does not apply here. What applies here is probably the Tri-City case, where you get the relief, preliminary relief, and then it's mooted by a passage of time. It's exactly what happened here. And as a matter of public policy and practicality, people who get a merit-based injunctive relief should not be denied the fee-shifting benefit of counsel fees just because it was mooted by the passage of time. Wasn't there a conversation about the remedy that the state would have if Judge McConnell is too hasty in granting the TRO? And if the individual had taken the exam and passed it, there would have been the remedy of coming back and saying, no, no, I made a mistake in my assessment of the merits.  Well, I'm going to allow the state to withdraw his bar success. And so there was still a possibility of a closer look at the merits, wasn't there? You could say that about the Tri-City case. If something had intervened before the property was – if they had to get to the merits before it was constructed, they might have to deconstruct the whole building. They may have to restore it back to the way it was. But that's not what happened. It got mooted by the passage of time. So that's what happened. So in this case, if it got mooted by the passage of time, it gets mooted by the passage of time. So in either case, that's always the possibility. In this case, it didn't matter because, unfortunately, he didn't pass it by the first time. So it's sort of like, you know, the Tri-City case, you know, it was completed, we go out. He took it, we go out. Thank you. Thank you. Thank you, counsel. Excuse me. Counsel, would you return to the podium, please? Counsel, would you return to the podium, please? Apologize. That's fine. Judge Lynch, do you have any questions for counsel? No, I do not. I guess you can sit down. Thank you. Thank you. I apologize. You reserve two minutes for rebuttal. I'm chiefly interested in this reference to the Rhode Island rule. If you could comment on that, and the two words, any court, which are heavily italicized. Well, I think there are a couple points on that. Number one, the Rhode Island Supreme Court can do a lot of things, but they don't confer federal jurisdiction on federal courts. So their passage of any rule, including Rule 13, doesn't confer and can't confer or take away the United States Supreme Court's jurisdiction. It just doesn't have that authority. But more directly to the point, I think it goes right back to federation. A denial on a petition for certiorari may not be a decision on the merits, but it still terminates the proceeding. And according to federation, that's the inquiry. It's not whether it's merit-based. It's whether it's the end of the state proceedings. And you heard Mr. Snappy just a couple moments ago acknowledge that he was under the impression that he had to exhaust the state proceedings before he went to federal court, which is directly in line with what he had presented to the Rhode Island Supreme Court, that if the Rhode Island Supreme Court did not grant his relief, he was going to appeal to the district court. I've read a lot of Rooker-Feldman cases over the last couple years. I've never seen one where the, quote, unquote, losing state party tells the state Supreme Court that they're going to appeal that decision to the federal district court. That's exactly what happened in this case. And, you know, if I led with the wrong issue, then, you know, maybe that was my misstep. But I think both issues were a layup. So if the court has any further questions, I'd be happy to entertain them. Judge Lynch, do you have any questions for counsel? No, I do not. All right. Thank you. Thank you, Your Honor. Thank you, counsel. Thank you both. Thank you, Your Honor.